IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

---

## KNOXVILLE, SEPTEMBER TERM, 1897.

---

### JONES *v.* CULLEN.

(*Knoxville.* November 6, 1897.)

1. GENERAL ASSIGNMENT. *Several distinct conveyances do not constitute, when.*

Several instruments not purporting or intended as a general assignment or parts thereof, but distinct and separate in form and purpose, bearing the same or closely related dates, conveying practically all of an insolvent debtor's property to pay or secure particular creditors to the exclusion of others, do not, in legal contemplation, constitute one transaction or instrument as among themselves, and do not become incorporated with and part of an invalid general assignment made by the debtor at or about the same date in such manner as to share its fate. (*Post, pp. 4–16.*)

16 P—1

Jones *v.* Cullen.

2. SAME. *Acts* 1881, *Chapter* 121, *construed.*

Whether an instrument, or several instruments constituting one in legal contemplation, shall be treated as a general assignment, under Acts 1881, Chapter 121, must be determined alone from the face of the papers. (*Post, pp. 12, 13.*)

Act construed: Acts 1881, Chapter 121.

Case cited and approved: Steedman *v.* Dobbins, 93 Tenn., 397.

3. SAME. *Trust deed made in contemplation of, sustained.*

A trust deed made in contemplation of a general assignment cannot be invalidated on that account, unless a general assignment, valid under Acts 1881, Chapter 121, is actually made within three months thereafter. An ineffectual attempt to make a general assignment will not suffice to avoid such trust deed. (*Post, pp. 13, 14.*)

Act construed: Acts 1881, Chapter 121.

Cases cited and approved: Wilson *v.* Eifler, 7 Cold., 32; Scheibler *v.* Mundinger, 86 Tenn., 692; Hays *v.* Covington, 16 Lea, 266; Steedman *v.* Dobbins, 93 Tenn., 397.

4. SAME. *Second deed of, without reconveyance, valid.*

A general assignment which is void and which has not been accepted by any of the creditors secured thereby, does not prevent the assignor from subsequently executing a valid and effective assignment to the same trustee, without any previous reconveyance of the property from the trustee. (*Post, pp. 20–22.*)

Cases cited: Galt *v.* Dibbrell, 10 Yer., 158; Robertson *v.* Sublett, 6 Hum., 313; Brevard *v.* Neely, 2 Sneed, 164; Mills *v.* Haines, 3 Head, 332; Furman *v.* Fisher, 4 Cold., 626; Baker *v.* Harlan, 3 Lea, 505; Farquharson *v.* McDonald, 2 Heis., 419; Tharpe *v.* Dunlap, 4 Heis., 688; Dews *v.* Olwill, 3 Bax., 432; Saylors *v.* Saylors, 3 Heis., 531; Overton *v.* Hollinshade, 5 Heis., 684; Washington *v.* Ryan, 5 Bax., 622; Nailor *v.* Young, 7 Lea, 735.

5. FRAUDULENT CONVEYANCE. *Invalid in part only.*

That one of several distinct claims secured by a trust deed is fictitious, does not invalidate the deed as to other claims that are *bona fide* and just. (*Post, pp. 16, 17.*)

Cases cited and approved: Mills *v.* Haines, 3 Head, 332; Keith *v.* Procter, 8 Bax., 189; Troustine *v.* Lask, 4 Bax., 163.

Jones *v.* Cullen.

6. SAME. *Amount of debt incorrectly stated.*

A description of a debt secured by a trust deed, as amounting to $800, when it is in fact only $600, does not render the trust deed fraudulent as to the actual amount of the debt, where the discrepancy was the result of mere inadvertence without any fraudulent design. (*Post, p. 17.*)

7. SAME. *Given to prevent prosecution for felony.*

That a trust deed was executed in the hope and expectation that the maker would thereby avoid a prosecution for felony, will not invalidate it, if the secured creditor did nothing to excite such hope, and the deed was made and accepted by him without any knowledge of the existence of such hope and expectation, or any agreement, express or implied, to forbear or suppress the prosecution. (*Post, pp. 17–19.*)

Case cited: 7 Wheat., 556.

8. DEED. *Absolute held to be a mortgage.*

A deed absolute in form given to indemnify the grantee on account of his indorsement of notes which he was subsequently obliged to pay is good as a mortgage. (*Post, pp. 19, 20.*)

Cases cited and approved: Jones *v.* Jones, 1 Head, 105; Ruggles *v.* Williams, 1 Head, 141; McGavock *v.* Deery, 1 Cold., 270; Turbeville *v.* Gibson, 5 Heis., 575: Leech *v.* Hillsman, 8 Lea, 747.

9. SUPREME COURT. *Question raised for first time on appeal.*

An objection that a deed of trust to secure creditors was not registered before the filing of the creditors' bills cannot, upon the facts of this record, be first raised on appeal. (*Post, pp. 23–25.*)

Cases cited and approved: Conley *v.* Deere, 11 Lea, 274: Manufacturing Co. *v.* Moore, 11 Lea, 289; Campbell *v.* Railroad, 16 Lea, 270; Nashville *v.* Wilson, 88 Tenn., 414; Fertilizer Co. *v.* Thomas, 97 Tenn., 484.

---

### FROM KNOX.

---

Appeal from the Chancery Court of Knox County. H. B. LINDSAY, Ch.

WASHBURN, PICKLE & TURNER, J. L. ROGERS, and INGERSOLL & PEYTON for Jones.

GREEN & SHIELDS, COMFORT & SPILLMAN, and LEWIS TILLMAN for Cullen.

WILKES, J.   These are creditors' bills, filed October 28, 29, and 31, 1896, attacking a number of conveyances, made by Cullen & Newman to their various co-defendants, as fraudulent in law and fact. The property was attached and placed in the hands of a receiver.   The conveyances attacked are as follows: (1) Trust deed, dated September 12, 1896, by C. Cullen to L. H. Spillman, on his household goods, for benefit of J. C. Cullen; (2) trust deed, dated September 12, 1896, by Cullen & Newman to L. H. Spillman, on a town lot, for the benefit of Arminta Price; (3) an assignment of notes and accounts, dated September 12, 1896, by Cullen & Newman to the City National Bank, for its own benefit; (4) trust deed, dated September 14, 1896, by C. S. Newman to John W. Green, on his household goods, for the benefit of Kate F. Newman and Jeanie S. House; (5) an assignment of stock of goods, dated September 14, 1896, by Cullen & Newman to S. G. Shields, for benefit of Mary E. Lloyd, C. Cullen, guardian of Hugh N. Lloyd, and the estate of Ellen Hunter, deceased; (6) an assignment of all their assets, dated September 14, 1896, by Cullen & Newman to S. G. Shields, for benefit of all their creditors; (7) an assignment of all their

assets, dated September 21, 1896, by Cullen & New-
man to S. G. Shields, for the benefit of all their
creditors; (8) deed in fee, dated July 30, 1896, by
Cullen & Newman to J. C. Cullen for tract of land,
"The Valley View Farm;" (9) two mortgages to
E. F. Cullen—one by C. S. Newman and wife of
their home place, dated August 8, 1896, and one
by Cullen & Newman of their storehouse and lot,
dated August 16, 1896—but the attack on these
mortgages is abandoned in this Court.    There are
also two mortgages of long standing on the store-
house and lot to Arbuckle Bros., but they are not
attacked in the bills.                                ﹨

Cullen & Newman filed pleas in abatement to the
attachments, but allowed judgments *pro confesso* on
the debts sued on.    The other defendants admit that
the assignments six and seven, called general assign-
ments, are fraudulent in law and void, but deny all
other charges of fraud.    Defendant, Shields, disclaims
all interest under the general assignments attacked,
but avers that a special assignment was made Octo-
ber 27, 1896, by Cullen & Newman, and he claims
under that.

The theory and allegations of the bills are that on
September 12, 1896, the defendants, C. Cullen and
C. S. Newman, as partners and individuals, being
sorely embarrassed and wholly insolvent, undertook
to make a general assignment, with certain prefer-
ences, under the Act of 1895, Ch. 128, and that
the six deeds first above recited, dated on September

12 and 14, were made at the same time, in pursuance of that common purpose, each in contemplation of, and in connection with, the others, and that, though separate in form, they in fact constituted parts of one general transaction, and in law should be construed as one instrument; that the Act of 1895, Ch. 128, being unconstitutional and void, said assignment must be tested by the Act of 1881, Ch. 121; that it failed to comply with the requirements of that Act; that no sworn schedule of assets was attached; that it made preferences in violation of said Act, and that it was therefore fraudulent and void; that the said deed of July 30, 1896, to J. C. Cullen, was made in contemplation of said general assignment, was delivered and registered along with, and must be construed as a part of, it, and share with it a common fate; that that deed and all of said special assignments and trust deeds of September 12 and 14, were made in contemplation of, and within three months of, said general assignment, and were therefore inoperative and void; that all of said deeds and assignments were fraudulent not only in law, but also in fact; and that said general assignment of September 21, 1896, was a mere copy of that of September 14, 1896, with one slight variation, and that it was subject to the same objection and attack as the other.

The answers insisted that the special conveyances were separate and distinct from each other and from the general assignments; were made in good faith,

and were valid, notwithstanding the Act of 1881, Ch.
121, but admits that the general assignments are in-
valid and void. The Chancellor was of opinion that
the several conveyances were separate and distinct, and
did not constitute one transaction, and should not
be, therefore, construed as one instrument; that the
general assignments were void; that conveyance No.
1 was fraudulent in fact and void; that trust deed
No. 4 was fraudulent and void as to the debt se-
cured to Kate F. Newman, but good and valid as
to the debt of Jeanie S. House; that deed No. 8
to J. C. Cullen was in fact a mortgage, and, as
such, was good to secure to said J. C. Cullen the
amount of claims against Cullen & Newman ex-
isting at the time of its execution, but not those
subsequently contracted; that the others of said spe-
cial assignments and trust deeds, Nos. 2, 3, 5, and
9 were good and valid; that said special assignment
of October 27, 1896, to S. G. Shields was inoper-
ative and void as against the rights of complainants,
and decreed the rights of the parties accordingly.

From so much of said decree as adjudged that
said several trust deeds and assignments of Septem-
ber 12 and 14 did not constitute, and cannot, there-
fore, be construed as one transaction and instrument;
and that said trust deeds and assignments Nos. 2, 3,
4, 5, and 8 are good and valid for any purpose
whatever, and operate as securities to the defend-
ants secured thereby, for any part of the indebted-

ness recited therein, the complainants appealed to the Supreme Court.

The Court of Chancery Appeals heard the cases, and held that conveyance No. 1 was *bona fide* and valid, and that it was not made in contemplation of a general assignment, but to secure and indemnify J. C. Cullen upon his indorsement of two notes, one for $5,000 to the Holston National Bank, and the other to the Merchants' Bank for $1,500, which were made at the time of the conveyance, and which J. C. Cullen has since been required to pay.

As to conveyance No. 2, the Court of Chancery Appeals find that the trust deed for the benefit of Mrs. Price was not made in contemplation of a general assignment, and was valid.

3. An assignment of $26,000 in notes and accounts by Cullen & Newman, on September 12, 1896, to the City National Bank as collateral security for $22,700 that they owed said bank. The Court of Chancery Appeals finds, as a fact, that this transfer was not made by Cullen & Newman, or accepted by the bank in contemplation of an assignment by said firm. It further finds that the bank's agents had no knowledge of, or anything to do with, the execution of any of the other instruments subsequently made by the firm of Cullen & Newman.

4. The Court of Chancery Appeals found the conveyance by C. S. Newman to John W. Green void as to Mrs. Newman but good as to the debt to Jeanie S. House.

Jones *v.* Cullen.

5. A special assignment or trust deed upon a stock of goods, executed September 14, 1896, by Cullen & Newman to S. G. Shields, trustee, to secure $6,800 to Mary E. Lloyd, $23,766.02 to Hugh N. Lloyd, and $800 to the estate of Ellen Hunter, deceased.

The Court of Chancery Appeals finds as a fact that this special assignment was made to secure valid indebtedness of the firm of Cullen & Newman; that it is a separate, independent instrument, and had no connection with the other instruments executed by Cullen & Newman; and that it is *bona fide* and valid for the purposes for which it was executed.

6 and 7. An assignment of all of their partnership property not heretofore conveyed, executed by Cullen & Newman, on September 14, 1896, to S. G. Shields, as assignee, for the benefit of their general creditors. A duplicate of this assignment, except that a provision for the payment of an attorney's fee of $75 to Comfort & Spillman is omitted, was executed and registered by the firm of Cullen & Newman on September 21, 1896. These two instruments were declared fraudulent and void by the Court of Chancery Appeals, because they did not comply with the fourth section of the Act of 1881, requiring that the assignors shall file a sworn schedule of all their property as a part of a general eral assignment.

8. The deed by Cullen & Newman to J. C. Cullen for the Valley View Farm was sustained,

but declared to be a mortgage and not an absolute deed.

9. Each of the members of the firm of Cullen & Newman also made individual trust deeds upon their individual property, dated September 14, 1896, which are attacked by the bills in this cause, and which have been declared fraudulent and void by the Chancellor and the Court of Chancery Appeals, and there is no appeal from this decree of the latter Court. These instruments need not, therefore, be further noticed.

As stated above, all of these instruments are set out and attacked in complainant's bill, but there are two other transfers made by the firm of Cullen & Newman—one on September 14, 1896, and the other on October 27, 1896—of their partnership property, which are not attacked by the first two bills, to wit:

10. A transfer by Cullen & Newman, on September 14, 1896, of $15,000 of their stock in the Knoxville & Fountain City Railroad Company, to the complainants, B. D. Jones *et al.*, as collateral security for their claims against Cullen & Newman.

11. A special assignment, made and registered by the firm of Cullen and Newman, on October 27, 1896, to S. G. Shields, as trustee, covering a portion of their partnership property, to secure specified creditors therein named, in specified amounts therein mentioned.

The first two bills of the complainants do not mention or in anywise attack this last special assign-

Jones *v.* Cullen.

ment of October 27, 1896, but it is set up in the answer of the assignee, S. G. Shields, and he claims title to the property conveyed by this instrument for the benefit of the creditors named therein. The last bill sets out this assignment, and avers that it was registered on October 27, 1896, but that it is fraudulent in law and in fact.

The Court of Chancery Appeals finds, as a fact, that this instrument was made in good faith; that it was registered before any of the bills in this cause were filed, and that it vested the assignee with the title to the property. The complainants' first, second, and third assignments of error are based upon the finding of the Court of Chancery Appeals that the several trust deeds and assignments attacked by their bills do not constitute, and cannot, therefore, be construed as, one transaction and instrument, and are not void as constituting parts of the void assignments made by Cullen & Newman on September 14 and 21, 1896.

The Court of Chancery Appeals has found, as a fact, that all of the trust deeds and special assignments now in controversy were executed in good faith by the firm of Cullen & Newman, and for the sole purpose of securing the just indebtedness therein set out. The Court of Chancery Appeals has also found, as a fact, that these several instruments are not parts of a general scheme on the part of Cullen & Newman to make a general assignment, with preferences in favor of the beneficiaries under these

respective trust deeds, and, further, that no such scheme existed even in the minds of Cullen & Newman.

The Court of Chancery Appeals, in one part of its opinion, says: "Now, the various conveyances herein set out and detailed were made, as a matter of fact, as well as of form and contents, as separate instruments, and they were made for the specific purpose of securing the debts, or alleged debts, specified in them. They were not intended either by the makers or by the beneficiaries as parts of one instrument. They were not followed by a valid general assignment. These being the facts, they were not, as we think, one instrument, either by virtue of the intention of the parties or by the operation of any sound principle of law, and it follows, logically, that the Chancellor committed no error in holding that they were separate instruments, and therefore not to be considered as one instrument."

It is not insisted that any one of the instruments in controversy was executed in an attempt to comply with the Act of 1881, Ch. 121. On the contrary, the conveyances referred to as general assignments were made under the provisions of the Act of 1895, which was very soon thereafter declared to be unconstitutional. The Act of 1881, Ch. 121, and the decisions of this Court construing it, give it a peculiar and special force, inasmuch as conveyances and confessions of judgment, made within three

months previous to the making of the general assignment and in contemplation of it, are by it vacated and set aside. Whether an assignment is executed under that Act can be ascertained only from its provisions—that is, from the face of the instrument. *Steedman, Steere & Co.* v. *Dobbins et al.*, 9 Pickle, 397.

If a conveyance is executed under that Act, and with an intention to have it comply therewith, in order to be valid and have the effect given to such an assignment under the Act, it must conform to it, and if it fail to conform to the Act it is ineffectual to convey the property, at least as against third persons, and is, in that sense, fraudulent in law. If it is thus void it does not have the effect which the Act gives to a conveyance valid under the Act, but it is inoperative and leaves the property as though it had never been executed. If, therefore, property has been previously conveyed in good faith, and not by an instrument fraudulent in its terms, such property and such conveyances will not be effected by the void assignment, but each will stand upon its own merits. Unquestionably several instruments may be considered if necessary to ascertain the purpose of the maker, but at last it must appear from some one or all of them that they fall under the Act of 1881, and are in conformity to it in order to give the effect provided by that Act.

If the special conveyances, when made, were *bona fide*, valid, and enforcible, then no subsequent act

of the assignors could make them invalid, except the making of a valid general assignment under the Act of 1881. The Act of 1881 provides that trust deeds, etc., taken within three months of a general assignment, and in contemplation of it, shall be void only in the event that they are followed by a general assignment. An ineffectual attempt to make a general assignment could have no greater effect upon previously executed instruments than any other subsequent fraudulent act of the debtor. Such fraudulent acts cannot invalidate previously existing and valid trust deeds. Bump on Fraud. Con. (3d Ed.), p. 364; 1 Am. & Eng. Enc. L. (1st Ed.), p. 869; Bump on Fraud. Con. (3d Ed.), p. 359; *Wilson* v. *Eifler*, 7 Cold., p. 32; *Scheibler* v. *Mundinger*, 2 Pickle, 692.

Prior to Act of 1881, general assignments with preferences, or special assignments for the benefit of any particular creditor, were permissible, under our law, by a failing debtor. The Act of 1881 does not create any new instrument, but merely regulates the old ones. The right of a failing debtor to make a special assignment for the benefit of particular creditors, is not abrogated by this Act. Such instruments are still good if not made in "contemplation" of a general assignment under the Act, and actually followed within three months by such general assignment. *Hays* v. *Covington*, 16 Lea, 266; *Scheibler* v. *Mundinger*, 2 Pickle, 692; *Steedman, Steere & Co.* v. *Dobbins*, 9 Pickle, 347. The fact that the

Jones *v.* Cullen.

special assignments or confessions of judgment are taken in "contemplation" of insolvency, or of a general assignment, is not sufficient, of itself, to make them void. This "contemplation" must be followed by the assignment, and that within three months. If "contemplation" and the valid assignment co-exist within the time limited, the title to the property will be divested out of the trustee and vested in the assignee, for the benefit of all creditors alike. But if either the "contemplation" or the existence of the legal general assignment is lacking, the title to the property will remain in the trustee for the benefit of the particular creditor.

The intention of the Act of 1881 was not to render void trust deeds that were made within three months of, and in contemplation of, a general assignment, for the mere purpose of allowing other creditors to take the place of those who had been diligent in securing their claims, but to guarantee all such creditors *pro rata* distribution of the assets of the failing debtor, when a valid general assignment had been made. This cannot be done under a void general assignment, and, therefore, such a general assignment can have no effect upon a valid instrument that had theretofore been taken. It is true that an unsuccessful attempt to make a general assignment, under the Act of 1881, will give to the creditors of the maker the opportunity, and it may be the grounds for attacking the property embraced in the general assignment, but it cannot vitiate or

affect in any way valid assignments previously made, which are not parts of the general assignment.

While the question now being considered must be determined under our own statutes and decisions, still, in analogous cases and under similar statutes, the same rulings have been made in other jurisdictions. *Manning* v. *Beck*, 14 L. R. A., 198–202; *Lake Shore Banking Co.* v. *Fuller*, 14 L. R. A., 203; *Lumber Co.* v. *Ott*, 142 U. S., 630; *Drake* v. *Paulhauser*, 66 Fed. Rep., 897; *Sandwich Mfg. Co.* v. *Max*, 24 L. R. A., 527; Bump on Fraud. Con. (3d Ed.), 363, 364; 1 Am. & Eng. Enc. L. (1st Ed.), 657 and notes, and pp. 861, 862.

The complainant's fourth assignment of error raises, as we conceive, only a question of fact, which has been found against them by the Court of Chancery Appeals. That Court finds, as a fact, that the claim of Mrs. Jeanie S. House, secured by the trust deed of C. S. Newman to John W. Green, trustee, on September 14, 1896, was a just liability of the firm of Cullen & Newman, and that Mrs. House did not know of or participate in the fraudulent intention of C. S. Newman in making said trust deed. Even if the claim of Mrs. Newman, secured by this same trust deed, was fictitious and fraudulent, it would not render the trust deed void as to Mrs. House. Under our decisions, one of the beneficiaries under an assignment may attack other claims secured therein as being fraudulent and void, and still claim under the assignment. The fact that one of the claims is

fictitious will not avoid the assignment as to the valid claims. *Mills* v. *Haynes*, 3 Head, 332; *Keith* v. *Procter*, 8 Bax., 189; *Troustine* v. *Lask*, 4 Bax., 163.

The fifth error assigned is in regard to the deed of trust to Shields for the benefit of Mary E. Lloyd and others. In addition to the matters already considered, it is said. that the trust deed in favor of Curtis Cullen, as guardian of Hugh Lloyd and the administrator of Ellen Hunter's estate, are fraudulent in fact. This is based upon the theory that Cullen had trust funds of these parties which he had used in his business, and thereby rendered himself liable to criminal prosecution for embezzlement or fraudulent breach of trust. The Court of Chancery Appeals finds that the conveyance was not fraudulent either in law or in fact, that the debts secured were *bona fide* honest debts owing by the firm. The debt to the estate of Ellen Hunter was described as $800 when it was only ' $600, but this was not with any fraudulent design, and the Court of Chancery Appeals held the conveyance good for both debts, placing the latter at its actual amount of $600. There is no evidence in the record that the conveyance was made to defeat or prevent a prosecution. That is merely the inference or argument of counsel from the circumstances. The discrepancy in amount was evidently an inadvertence, and is too slight to be material.

In Bump on Fraudulent Conveyances, 3d Ed., pp.

16 P—2

189, 190, it is said: "The secret motives which prompt the preference are immaterial. The law can take no cognizance of feelings and intentions which are not manifested by external conduct. It cannot assign a bad motive to an act which is not wrong either in itself or in its necessary consequences. When the act is right, no secret feeling can change its character. In contemplation of law, the motive which results in a proper action is not a bad one. The desire to avoid a sacrifice, or to prevent an expected criminal prosecution, or an expectation to receive future employment, or that the property will be settled upon the debtor's wife or family, or mere caprice, or favoritism, or the gratification of secret ill will, does not effect the validity of the transfer, for such secret motives are not the subject of legal inquiry. Where there is merely a preference, even a jury is not at liberty to deduce fraud from that which the law pronounces honest." Bump on Fraud. Con. (3d Ed.), pp. 189 and 190.

"A debtor has the right to prefer one creditor to another in payment, and it is no objection to the validity of an assignment for that purpose that it was made by the grantor, and received by the grantee, as trustee, in the hope and expectation, and with a view, of preventing prosecution for a felony connected with his transactions with his creditors, if the preferred creditors have done nothing to excite that hope, and the assignment was made without their knowledge or concurrence at the time of its

execution, and without a knowledge of the motives which influenced the assignor, or was not afterwards assented to by them under such engagement, express or implied, to suppress or forbear the prosecution." 6 Wheat. (U. S.), 223.

The complainants' sixth assignment of error avers that, upon the facts found by the Court of Chancery Appeals, the transfer of the Valley View Farm, by Cullen & Newman to J. C. Cullen, on July 30, is fraudulent in law. The bills make only one specific charge as to this conveyance. After setting out the fact and date of the deed, and that it was registered on September 14, 1896, the bills charge: "While this deed is absolute in form, complainants are informed, believe, and allege that it was in fact a mortgage made to secure the defendant's, J. C. Cullen, pre-existing indebtedness and liability to him of said Cullen & Newman, amounting to about $6,500." Then follows, under a separate paragraph, a general charge that all of said instruments are fraudulent in law and in fact.

The Court of Chancery Appeals has found as a fact that this deed was intended to be, and is in fact, a mortgage, and that it was made in good faith to secure and indemnify J. C. Cullen against loss on account of his indorsement of two notes, one for $5,000, to the Holston National Bank, and the other for $1,500, to the Merchant's Bank, which indorsements were made at the time of the execu-

tion of the deed, and which notes the defendant, J. C. Cullen, afterwards paid.

These being the facts, under our decisions the deed is valid and effectual as a mortgage to secure and indemnify the defendant, J. C. Cullen, against loss for this $6,500 that he has paid out of the firm of Cullen & Newman on said indorsements. It has long been settled in this State that an absolute deed, under parol agreement that it shall be held merely as security, is good as a mortgage. *Jones* v. *Jones*, 1 Head, 105; *Ruggles* v. *Williams*, 1 Head, 141; *McGavock* v. *Deery*, 1 Cold., 270; *Turbeville* v. *Gibson*, 5 Heis., 575; *Leach* v. *Hillsman*, 1 Lea, 247.

The Chancellor held that the special deed of trust executed by Cullen & Newman on October 27, 1896, conveying to S. G. Shields, trustee, property already covered by the assignment of September 14, was invalid because ineffectual to convey title to the assignee. Respondent, S. G. Shields, trustee, assigned this holding of the Chancellor as error, and the assignment was sustained by the Court of Chancery Appeals. This holding of the Court of Chancery Appeals is now assigned as error by complainants.

1. The Chancellor's holding was based solely on the theory that the previous deed of assignment of September 14 had divested all title out of Cullen & Newman and vested it in S. G. Shields, trustee, so that, having no longer any title, Cullen & Newman

could not afterwards, on October 27, confer any title by this deed of trust of that date.

The argument now is that the title to .these assets passed to Shields, trustee, by the conveyance of September 21, 1896, and that conveyance had been acknowledged, registered, and delivered to the trustee; that he had accepted it, and given bond, and taken possession; that he had never reconveyed the goods or surrendered possession, and that the conveyance, while void as to certain creditors, was good between the parties and everyone else, except the attacking creditors, and the second conveyance was therefore a nullity. The argument is that the real purpose of this latter conveyance was to uphold and sustain the special deeds, etc., which had been executed under the impression that the Act of 1895, in regard to general assignments, was valid, whereas it was soon thereafter declared to be unconstitutional. It is laid down in a number of cases that a deed of assignment may be revoked by the assignor at any time after its execution and delivery, but before any of the beneficiaries have actively accepted it. This was held in the following cases: *Gault* v. *Gibbrell*, 10 Yer., 158; *Robertson* v. *Sublett*, 6 Hum., 213; *Brevard* v. *Nealy*, 2 Sneed, 164; *Mills* v. *Harris*, 3 Head, 332.

It was afterwards held, in several cases, that after the delivery of the trust deed and registration, the acceptance of creditors secured thereby would be presumed, without any active steps taken .by them.

*Furman* v. *Fisher*, 4 Cold., 626; *Barker* v. *Harlan*, 3 Lea, 505; *Farquharson* v. *McDonald*, 2 Heis., 419; *Tharp* v. *Dunlap*, 4 Heis., 688; *Dews* v. *Olwell*, 3 Bax., 432; *Saylor* v. *Saylor*, 3 Heis., 531; *Overton* v. *Hollinshade*, 5 Heis., 684; *Washington* v. *Ryan*, 5 Bax., 622; *Nailor* v. *Young*, 7 Lea, 735.

But in all these cases the deeds of trust were good and valid, and acceptance was presumed, because it was beneficial. But no such presumption can arise when the conveyance is invalid and void. Such presumption only arises to aid and protect the beneficiary, and not to estop or prejudice him. We think this is not a case, however, in which the matter of presumption arises.

It appears that no creditor has come forward to claim under the assignment of September 14, 1896. A large portion of them are before the Court in these cases expressly disclaiming any acceptance of that conveyance, and contending that it is invalid. The bills allege that it is invalid, the answers admit it, and there is no contention otherwise. The assignor and assignee abandoned it, and substituted in its stead the conveyance of October 27. The assignee in the latter conveyances is the same as under the former, so that the legal title to the property is preserved in him. The beneficiaries under the conveyance of October 27 are the general creditors of the firm, including the complainants, and the conveyance is valid so far as these questions are raised or involved.

Finally, it is said that no effect can be given to the conveyance of October 27 as against creditors, because there is no proof that it was ever registered before the filing of the bills in this cause.   In their original opinion, the Court of Chancery Appeals find , that it was so registered.   Upon a petition to rehear on this point, it was urged upon that Court that there was no proof to sustain its finding.   Upon the petition to rehear, that Court reports that the three causes were consolidated and heard together; that in one of the bills, that of Dalzell, Gilman, Layton & Co., being the last one filed, it was alleged that the instrument was registered before the bills were filed, but was void, while in the other two the bills made no reference to the conveyance or its registration, and only the answers set up the execution and registration of the instrument.   A copy of the deed is in the record made an exhibit to the answer of the trustee, and does not appear to have attached to it any certificate of registration.

The Court of Chancery Appeals report that· the record convinces them that the cases were developed and treated in the Court below on the theory that the deed was registered, and the point as to nonregistration did not appear to have been made in that Court, but the contest was upon wholly · different grounds.   That Court states that it bases its finding, that the deed was registered, upon the fact that it was delivered to the trustee, Shields; that he carried it to the courthouse;   that he proceeded to

partially make a bond to execute it; that the answer to one of the bills expressly averred the registration; that this bill was consolidated with the other two and heard with them; that the question of nonregistration was not raised in the Court below; and that the original conveyance of September, 1896, was abandoned, and so treated, and that of October 27 substituted in its stead.

It appears that no appeal was prayed to this Court by Balzell, Gilman, Layton & Co. from the Court of Chancery Appeals, and hence the pleadings in that case, it is argued, are not before us. The question of registration or no registration, as presented by the finding of the Court of Chancery Appeals under this record, is not one purely of fact, but of law and fact combined. If it were wholly a question of fact, this Court would be precluded thereby.

We are of opinion that the finding and conclusion of the Court of Chancery Appeals is correct upon this point, and that inasmuch as the question of registration was not presented in the Court below it cannot be set up for the first time in the Court of Chancery Appeals. The contest having been made in the Court below upon other grounds, when this defect, if it existed, must have been necessarily and immediately fatal, the Court of Chancery Appeals was warranted in finding that it was conceded, and not questioned, and this must conclude the complainants from setting it up on appeal.

Jones *v.* Cullen.

*Conley* v. *Deere et al.*, 11 Lea, 274; *Keep Mfg. Co.* v. *Moore*, *Ib.*, 289; *Campbell* v. *Railroad*, 16 *Ib.*, 270–289; *Nashville* v. *Wilson*, 4 Pickle, 414; *Reed Fertilizer Co.* v. *Thomas*, 13 *Ib.*, 484.

The decree of the Court of Chancery Appeals is affirmed.